**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERICA C. JOHNSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-4908** |
| | : | |
| **AFSCME DISTRICT COUNCIL 33,** | : | |
| ***et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**PADOVA, J.** **OCTOBER 1, 2026**

Plaintiff Erica C. Johnson filed this *pro se* civil action asserting claims of employment discrimination against Defendants AFSCME District Council 33 and AFSCME Local 696 (referred to collectively as the "Union").[1] Johnson also filed a motion to proceed *in forma pauperis*, as well as a motion for appointment of counsel. For the following reasons, the Court will grant Johnson leave to proceed *in forma pauperis* and dismiss the Complaint. The motion to appoint counsel will be denied.

[1] The Court understands AFSCME to refer to the American Federation of State County and Municipal Employees, Philadelphia District Council 33, the labor union that represents certain employees of the City of Philadelphia. *See Alvarez v. City of Philadelphia*, Civ. A. No. 23-3570, 2023 WL 6520507, at *1 n.2 (E.D. Pa. Oct. 4, 2023).

## I. FACTUAL ALLEGATIONS[2]

Johnson, who is employed by the City of Philadelphia as a Library Assistant 1 at the Free Library of Philadelphia,[3] used the Court's form complaint for alleging employment discrimination to plead her claims against the Union and supplemented it with several typewritten pages. By checking the appropriate locations on the form, Johnson indicates that she brings claims against the Union of race and gender discrimination under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e-2000e-17, as well as the Pennsylvania Human Relations Act ("PHRA"), and that she seeks injunctive relief and damages. (Compl. at 1, 3, 10.) Johnson indicates on the form that she is a black, dark-skinned female. (*Id.* at 3.) The discriminatory conduct of which Johnson complains includes "Failure to stop harassment," "Unequal terms and conditions of my employment," "Retaliation," and "Other," which she describes as the Union's "abandonment of grievance and failure to provide support." (*Id.* at 2-3.) Johnson also attached three copies of the Notice of Right to Sue Letter issued by the EEOC as to her charges. (ECF No. 2-1.)

Johnson asserts that her "interactions with AFSCME District Council 33, Local 696 were limited and did not provide the support [she] needed." (*Id.* at 3, 4.) She allegedly contacted the Union because she was "dealing with workplace violence, harassment, retaliation and unfair discipline" at the Joseph E. Coleman Regional Library. (*Id.*) She sought "guidance and representation" but claims that the "Union did not offer meaningful assistance." (*Id.*) Johnson

---

[2] The factual allegations are taken from the Complaint ("Compl."), which is the Court's form complaint for alleging employment discrimination and several additional typewritten pages. (ECF No. 2.) The Court considers the entirety of the submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The Court has also considered the Exhibits filed by Johnson on August 17, 2026. (*See* ECF Nos. 7-10.)

[3] (*See* Compl. at 2; ECF No. 8 at 2.)

avers that she spoke with "Union President Tony Dinkins" on two occasions—once in person and once by text message—before he stopped responding to her. (*Id.* at 4.) She allegedly continued to contact him, but "did not receive any follow-up or support." (*Id.*) Johnson also claims that "[d]uring the disciplinary process, [her] union representative was changed" without explanation and when she "finally spoke with the new representative," she was told that the outcome of her case had already been decided. (*Id.*) She asserts that because the outcome was decided before she "had the chance to speak or present [her] side," she did not receive "fair representation." (*Id.*) She also avers that "Assistant Chief Hoagland"[4] told her Union representative that she "refused Union representation," but this statement was false and "made it harder for [her] to receive proper support." (*Id.*)

Johnson avers that "[t]hroughout this process, [she] repeatedly asked the union for copies of documents related to [her] case" but did not receive anything. (*Id.*) She contends that "the union did not intervene when Library HR mishandled investigations, ignored [her] reports, or opened retaliatory cases against [her]." (*Id.*) Johnson further claims that the union "did not challenge the negative performance evaluation, the permanent EAP recommendation, or the repeated investigations based on false allegations" and "did not assist when supervisors and coworkers" continued to harass her. (*Id.*)

Johnson requests an order directing Defendants and Tony Dinkins to stop ignoring her and treating her unfairly, and to refrain from retaliating against her. (*Id.* at 5.) She wants "the union to correct the harm caused when they removed [her] chosen representative," "abandoned [her] grievance," "failed to communicate," and left her "without support during important

[4] According to the Exhibits filed by Johnson on August 17, 2026, Hoagland is the Assistant Chief at the Free Library of Philadelphia and one of Johnson's supervisors. (*See* ECF No. 8-10 at 1.)

meetings and interviews." (*Id.*) Johnson avers that the Union's "failures" have caused her emotional distress, and she seeks "fair, equal, and consistent representation to all members, including [her]," and she requests that the Union "handle grievances properly, communicate honestly, and make sure no member is left without representation or guidance."[5] (*Id.*) She seeks the restoration of union representation and monetary damages in an unspecified amount. (*Id.*)

On August 17, 2026, Johnson filed approximately eighty pages of exhibits which the Court has considered. *See* ECF Nos. 7-10. These exhibits include a timeline that Johnson prepared regarding her alleged interactions with union representatives following a "Workplace Violence Incident" that occurred on June 10, 2025. (ECF Nos. 7, 7-1.) Johnson represents that this exhibit documents her requests for union representation and "repeated failures by the union to act or respond." (ECF No. 7 at 1.) Johnson also attaches copies of email correspondence and text messages with union representatives to document her "requests for representation, hearing preparation, appeal follow-up, HR coordination, and repeated failures by the union to respond or act." (ECF No. 8-2 at 1, ECF Nos. 8-9.) In an email message to Dinkins dated February 16, 2026, Johnson indicated that she was "not being represented appropriately by District Council 33." (ECF No. 8-13 at 1.) That same day, Johnson "express[ed] serious concerns about the level of representation" she received from union representatives in connection with her "ongoing disciplinary matter" stemming from the June 10, 2025 and October 25, 2025 "workplace

[5] To the extent Johnson seeks relief on behalf of others, she may not do so. An individual who is not an attorney may not represent another party in federal court. *See Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court." (citation omitted)); *Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015) (*per curiam*) ("The federal courts 'have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity.'" (quoting *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th Cir. 2008)) (additional citation omitted)).

violence incidents." (ECF No. 8 at 1-2.) Johnson also submitted a copy of the grievance form she filed with the union on March 26, 2026 (ECF No. 10-2), wherein she requested, *inter alia*, that the union assign a new representative "who will properly represent her interests." (*Id.* at 4.)

## II. STANDARD OF REVIEW

Because Johnson appears to be unable to pay the fees to commence this civil action, the Court will grant her leave to proceed *in forma pauperis*. Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, *Twombly*, 550 U.S. 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal,* 556 U.S. at

678. "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotation omitted). To state an employment discrimination claim, as with any other claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotation omitted).

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)); *see also Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (claims under the PHRA are interpreted coextensively with their federal counterparts).

Unions can be subject to liability under Title VII for discrimination against its members. *See Martinez v. Int'l Bhd. of Elec. Workers-IBEW Local Union No. 98*, 352 F. App'x 737, 740 (3d Cir. 2009) (*per curiam*) (citations omitted); 42 U.S.C. § 2000e-2(c) (stating that it is an "unlawful employment practice" for a labor organization "to cause or attempt to cause an

employer to discriminate against an individual in violation of this section"). The Union can only be liable if it "instigated or actively supported the discriminatory acts," *Anjelino v. New York Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999), or "took an active role in the discrimination," *Martinez*, 352 F. App'x at 740 (citation omitted).

Johnson's allegations do not support a plausible inference that the Union itself "instigated or actively supported" any alleged discrimination.[6] Instead, Johnson claims only that the Union "did not provide the support [she] needed" and failed to "offer meaningful assistance." (Compl. at 3, 4.) She avers that she contacted the Union because she "was dealing with workplace violence, harassment, retaliation, and unfair discipline at the Joseph E. Coleman Regional Library," her place of employment. (*Id.* at 4.) Johnson asserts that the Union "did not advocate for [her], did not respond to [her] concerns, and did not provide the representation [she] needed." (*Id.*) There are no indications in the Complaint, or Exhibits for that matter, that Johnson complained to the Union about any alleged discrimination based on her race, color, or sex, or that the Union otherwise took an active role in discriminating against her. Accordingly, Johnson's discrimination claims under Title VII against the Union will be dismissed as undeveloped.

---

[6] Johnson asserts without further factual explanation, that the Union abandoned her grievance. (Compl. at 3.) Courts have adopted a three-part test for determining if a union supported the discriminatory actions of an employer through failure to investigate grievances. "To establish a *prima facie* case in this context, a plaintiff must show: (1) a violation of the [collective bargaining agreement] with respect to the plaintiff; (2) the union permitted the violation to go unaddressed, thereby breaching its duty of fair representation; and (3) some indication that the union's actions were motivated by some discriminatory animus." *See Lopresti v. Cnty. of Lehigh*, Civ. A. No. 12-6281, 2014 WL 1885278, at *6 (E.D. Pa. May 12, 2014) (citing *Young v. Local 1201, Firemen & Oilers Union,* Civ. A. No. 07-3576, 2009 WL 3152119, at *4 (E.D. Pa. Sept. 25, 2009), *aff'd,* 419 F. App'x 235 (3d Cir. 2011)) (add'l citation omitted). Johnson does not allege any facts concerning a collective bargaining agreement, how or when an alleged grievance was abandoned, or that any alleged abandonment was motivated based on a discriminatory animus.

Johnson also checked off retaliation in the section of the form complaint that asked her to identify the discriminatory conduct of which she complains. (Compl. at 3.) Title VII prohibits a labor union from retaliating against a member. *See* 42 U.S.C. § 2000e-3(a). The only mention of retaliation in the Complaint is Johnson's request that the Court order the Union to "stop retaliating against [her]." (Compl. at 5.) Johnson, however, does not allege any facts setting forth how or when the Union engaged in any retaliatory conduct. "To establish a *prima facie* case of retaliation [against a labor union], a plaintiff must demonstrate that: (1) [s]he participated in a protected activity known to the Union; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Peden v. Dist. Council 33 Loc. 696*, Civ. A. No. 14-3045, 2015 WL 5584437, at *5 (E.D. Pa. Sept. 23, 2015) (citing *Patterson v. AFSCME #2456*, Civ. A. No. 07-965, 2008 WL 2073991, at *12 (M.D. Pa. May 14, 2008), *aff'd*, 320 F. App'x 143 (3d Cir. 2009)), *aff'd*, 662 F. App'x 183 (3d Cir. 2016). "Protected activity" means participation in Title VII proceedings, or actions opposing discrimination made unlawful by Title VII. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citation omitted). The Complaint does not allege that Johnson participated in any protected activity that was known to the Union or that she suffered an adverse employment action as a result thereof. Johnson's mere assertion that the Union abandoned a grievance, without more, does not plausibly allege retaliation. Accordingly, Johnson's retaliation claims under Title VII against the Union will be dismissed as undeveloped.

Finally, liberally construing Johnson's allegations, it appears that she asserts a claim of "unfair representation" against the Union. (*See, e.g.*, Compl. at 4 (averring that Johnson "was not being given fair representation"); *id.* at 5 (requesting that the Court direct the Union to provide "fair, equal, and consistent representation").) To the extent that Johnson intends to bring

an unfair representation claim against District Council 33 or Local 696 under Section 301 of the Labor Management Relations Act ("LMRA"), the claim must be dismissed. An employee may bring a "hybrid" action under Section 301, in which she asserts a claim against her employer for breach of a collective bargaining agreement alongside a claim against her union for breach of the duty of fair representation. *Serv. Emp. Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 94 n.2 (3d Cir. 1992) (citation omitted); *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 526 (D.N.J. 2017). "In the 'hybrid' suit, the plaintiff [must] prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa." *Johnson v. Laundry Workers LCL 141 & Agents*, 419 F. App'x 146, 148 (3d Cir. 2011) (quoting *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993). States and their "political subdivisions"—like the City of Philadelphia—are not "employers" under the LMRA and thus cannot be liable under the Act. *See* 29 U.S.C. § 152(2) ("The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation . . . or any State or political subdivision thereof . . . ."); *Mills v. AFSCME Dist. Council 33*, No. 20-1272, 2020 WL 3791568, at *5 (E.D. Pa. July 7, 2020) (dismissing unfair representation claim because the City of Philadelphia "is not subject to Section 301 under the [LMRA]"); *see also Manfredi v. Hazleton City Auth., Water Dep't*, 793 F.2d 101, 104 (3d Cir. 1986) (finding that the defendant water authority was a "political subdivision" and therefore, not an "employer" under the LMRA). Moreover, "[b]ecause the City [of Philadelphia] is not an employer under the LMRA, individuals working for political subdivisions cannot be considered 'employees' entitled to bring suits under Section 301 of the LMRA." *Alvarez v. City of Philadelphia*, Civ. A. No. 23-3570, 2023 WL 6520507, at *5 (E.D. Pa. Oct. 4, 2023); *Castellani v. Bucks Cnty. Municipality*,

Civ. A. No. 07-1198, 2008 WL 618653, at *3 (E.D. Pa. Feb. 29, 2008) (dismissing LMRA claim because Bucks County is a political subdivision of State of Pennsylvania and therefore plaintiff is not an employee able to bring suit under LMRA). Accordingly, any LMRA claim Johnson seeks to bring must be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Johnson leave to proceed *in forma pauperis* and dismiss her Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Johnson's Motion for the Appointment of Counsel will be denied without prejudice at this time as premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (stating that, in ascertaining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has "arguable merit in fact and law"). The Court will permit Johnson an opportunity to file an amended complaint in the event she can address the defects the Court has noted with respect to her Title VII claims only. An appropriate Order follows.

**BY THE COURT:**

**/s/ John R. Padova, J.**

**JOHN R. PADOVA, J.**